In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1471

William A. Cook and Gayle T. Cook,

Petitioners-Appellants,

v.

Commissioner of the Internal Revenue Service,

Respondent-Appellee.

Appeal from the United States Tax Court.
No. 257-99--Arthur L. Nims, III, Judge.

Argued September 14, 2001--Decided October 22, 2001


   Before Flaum, Chief Judge, and Manion, and
Williams, Circuit Judges.

   Flaum, Chief Judge.  William A. Cook and
Gayle T. Cook challenge a determination
by the Tax Court that the spousal
interests created in their respective
Grantor Retained Annuity Trusts are not
"qualified interests" within the meaning
of 26 U.S.C. sec. 2702, and are therefore
not entitled to exemptions from gift tax
liability. For the reasons stated herein,
we affirm the decision of the Tax Court.


I.  BACKGROUND

   In 1963, William and Gayle Cook
established a business in their home to
market and manufacture medical devices
used during minimally invasive surgical
procedures. That business, now called
Cook Group Incorporated ("CGI"), grew
considerably over time and is now a
multi-million dollar corporation.

   In 1993, William and Gayle Cook
separately established two Grantor
Retained Annuity Trusts ("GRATs")./1 In
1995, William and Gayle Cook again
established two separate GRATs.
   The 1993 GRATs established by the Cooks
are very similar. On June 7, 1993,
William Cook transferred 12,600 shares of
Class A common stock of CGI into his
GRAT. Gayle Cook transferred the same
amount of Class A stock of CGI into her

GRAT on the same day. Both GRATs provided for annual payments of 23.999% of the initial fair market value of the trust corpus, for a period of five years, to the respective grantors. Each GRAT also provided that, in the event that a grantor survived the five year term of his or her annuity, the remaining trust property would be used to establish a separate trust for the Cooks' son, Carl.

If, however, the grantor of a trust died before the expiration of the five-year term, the remaining trust property would be disposed of under a Contingent Marital Annuity Trust ("CMAT"). Under the CMAT, the surviving spouse would receive the same annual payments for the remainder of the deceased grantor's five-year annuity term. If the surviving spouse died before the expiration of that term, the remaining CMAT assets would be used to form a separate trust for Carl Cook.

The 1993 GRATs were irrevocable except that, in each, the grantor retained the right to revoke the surviving spouse's designation as a successor annuitant. In addition, the 1993 GRATs provided that the spousal interests contained in each GRAT were contingent upon the grantor and spouse remaining married.

The 1995 GRATs were similarly structured. On August 30, 1995, William Cook transferred 14,360 shares of CGI stock into his GRAT and Gayle Cook transferred 11,300 shares of CGI stock into hers. William Cook's 1995 GRAT provided that he would receive an annual payment for a period of three years. The annuity amount for each year was to be determined by multiplying the initial fair market value of the trust corpus by .3175 for year one and by .3810 and .4572, for years two and three respectively. If he survived the three year term, the remaining trust property would be used to fund a separate trust for Carl Cook.

Gayle Cook's 1995 GRAT provided that she would receive annual payments for a term of five years. The annual annuity amount was determined by multiplying the initial fair market value of the trust by .168940 for year one and by .202728, .242736, .2919283, and .3503139, for years two through five respectively. If she survived the five year term, the

remaining trust property would be used to fund a separate trust for Carl Cook.

The 1995 GRATs also made provisions in the event a grantor died before the expiration of his or her annuity term. If a grantor died before the expiration of his or her annuity term, the remaining trust property would be disposed through a CMAT, with the surviving spouse receiving the remaining payments from the grantor's annuity term. Like the 1993 GRATs, the 1995 GRATs provided that spousal interests were contingent upon the Cooks remaining married. Similarly, each grantor reserved the right to revoke his or her spouse's designation as a surviving annuitant.

Both William and Gayle Cook filed gift tax returns for 1993 and 1995. In reporting the taxable value of their respective GRATs, both of the Cooks determined that the value of the dual-life annuities that they had created were exempt from gift tax liability./2 The Commissioner of the Internal Revenue Service disagreed. According to the Commissioner, the spousal interests contained in each GRAT did not meet the requirements of 26 U.S.C. sec. 2702 and, accordingly, were not "qualified interests" exempted from gift tax liability. Instead, the Commissioner concluded that only the grantors' individual interests could be considered "qualified interests."

The Cooks contested the Commissioner's determinations in the Tax Court. After initial proceedings, the Cooks eventually filed a motion for partial summary judgment, claiming that the spousal annuities contained in their GRATs were "qualified interests" and should therefore not be subject to gift tax liability. The Commissioner filed a cross motion for summary judgment, arguing that the spousal interests should not be exempted from an imposition of the gift tax.

The Tax Court entered judgment against the Cooks. According to the court, the spousal interests contained were not "qualified interests" and, therefore, should be subject to the gift tax.

William and Gayle Cook now appeal the Tax Court's decision to this court.

II.  DISCUSSION

   For gift tax purposes, when a donor makes a gift in trust to a family member, the value of the gift, and whether that gift contains exemptions for "qualified interests," is determined by section 2702 of the Internal Revenue Code. A donor can avoid gift tax liability only on those portions of the transfer that are deemed to be "qualified interests." Under section 2702, a "qualified interest" is:

(1) any interest which consists of the right to receive fixed amounts payable not less frequently than annually,

(2) any interest which consists of the right to receive amounts which are payable not less frequently than annually and are a fixed percentage of the fair market value of the trust (determined annually), and

(3) any non-contingent remainder interest if all of the other interests in the trust consist of interests described in paragraphs (1) or (2).

26 U.S.C. sec. 2702(b) (emphasis added).

   The lower court found that the spousal interests contained the Cooks' respective GRATs were not "qualified interests" because: (1) the terms of the spousal interests were contingent, not fixed, and not ascertainable at the trusts' inceptions and; (2) they failed to adhere to proper durational requirements.

   We review the lower court's grant of summary judgment in favor of the Commissioner de novo. See e.g., Warsco v. Preferred Technical Group, 258 F.3d 557, 563 (7th Cir. 2001).

A.  Contingency of the Spousal Interests

   In determining that the spousal interests contained in the Cooks' GRATs were contingent, the Tax Court relied upon regulations promulgated under section 2702. These regulations state that "[t]he governing instrument [of a GRAT] must fix the term of the annuity or the unitrust interest." Treas. Regs. sec. 25.2702-3(d)(3), Gift Tax Regs. Specifically, the lower court relied upon language stating that a particular

interest was non-contingent because its terms were "fixed and ascertainable at the creation of the interest." Treas. Regs. sec. 25.2702-3(e), Example 6, Gift Tax Regs. Relying upon Example 6, the court interpreted these regulations to mean that the terms of a remainder interest must be fixed and ascertainable at the inception of the trust. The lower court made this interpretation after examining several examples contained in the regulations promulgated under section 2702.

In their appeal, the Cooks claim that the "fixed and ascertainable" standard applied by the Tax Court is both inappropriate and illogical. According to the Cooks, the "fixed and ascertainable" standard should not be employed because it appears only in a demonstrative example to a regulation and not in the regulation itself. Furthermore, in opposition to the "fixed and ascertainable" standard, the Cooks cite Walton v. Comm. of the I.R.S., 115 T.C. 589 (2000). In that case, a grantor created a trust that provided her fixed annual payments. Id. In the event of the grantor's death, the annual payments were to continue to her estate for the remainder of the annuity term. Id. The court did not, however, disqualify these remainder payments as contingent because they would vest upon the grantor's death. Id. According to the Cooks, the spousal interests contained their GRATs are identical to the remainder interests discussed in Walton and are no less valid.

We find the Cooks' arguments in this regard unavailing. First, the fact that the "fixed and ascertainable" standard comes from an example contained in a regulation, rather than the body of a regulation, is of no import, as examples set forth in regulations remain persuasive authority so long as they do not conflict with the regulations themselves. Freeport Country Club v. United States, 430 F.2d 986, 992 (7th Cir. 1970). Second, Walton is distinguishable from the case at bar. In Walton, the contingent annuity payments were made payable to the grantor's estate in the event of the grantor's death. The Tax Court properly treated the annuity in question as one for a term of years because a grantor cannot make a gift to

himself or to his estate.

It is clear that, in drafting section 2702, Congress intended to curb potential valuation abuse associated with intra-family transfers of wealth. 136 Cong. Rec. 30,538 (1990). The clearest way to curb against such valuation abuse is to make sure that terms of any gift are "fixed." We agree with the Tax Court's interpretation and find that, in order to be considered non-contingent, the terms of a remainder interest in a GRAT must be fixed and ascertainable at a trust's inception.

When we examine the terms of the Cooks' respective GRATs, we also agree that the spousal interests contained in each are not "qualified interests" under section 2702. First and foremost, the interests are contingent. Under both the 1993 and 1995 GRATs, a spouse is entitled to income only if: (1) the spouse survived the grantor and; (2) the spouse and the grantor have remained married. With these pre-conditions in place, it is possible (perhaps even probable) that a spouse's interest might never vest. If, for tax purposes, the value of a gift made in trust can be reduced by an ephemeral interest, the potential for valuation abuse increases considerably./3 In light of this concern, and the fact that the residual interests contained in the Cooks' GRATs leave open the possibility for manipulation, we hold that they are not "qualified interests."

B.  Durational Requirement

In addition to their contingent nature, the Tax Court also found that the spousal interests contained in the Cooks' 1993 and 1995 GRATs were not "qualified interests" because they violated the durational requirements of Treas. Reg. sec. 25.2702-3(d)(3). We agree with the Tax Court on this point as well.

When, as here, a grantor retains the right to revoke a spousal interest, the spousal interest itself is considered to be retained by the grantor. A grantor-retained interest must "be for the life of the term holder, or for a specified term of years, or for the shorter (but not the longer) of those periods." Id. (emphasis added). In the case at bar, the

spousal interests created by the Cooks can exist for the life of the grantor or for a term of years, regardless of which term is shorter./4 As both the Tax Court and the appropriate regulations have demonstrated, this is impermissible.

## III.  CONCLUSION

Because the spousal interests created by the Cooks in their respective GRATs are not fixed and ascertainable and those interests violate the appropriate durational requirements, we Affirm the decision of the Tax Court.

FOOTNOTES

/1 A GRAT is a vehicle that allows a grantor to irrevocably set aside funds, in trust, for an identified beneficiary and still retain, for a set number of years, a pre-determined annual income from the corpus of the trust.

/2 The value of the sum exempted from gift tax liability was determined through the use of actuarial calculations.

/3 Indeed, one does not need to go very far afield to imagine the lengths to which an ingenious tax evader might go to avoid gift tax liability. A particularly wily individual might exploit a loophole by marrying and divorcing all for the purposes of lessening the taxable value of a gift to his or her family members.

/4 The Cooks argue that the durational requirement of section 25.2072-3(d)(3) should be interpreted to accord with the rules governing Charitable Trusts. See, e.g., I.R.C. sec. 1.664-2(d) (the term of a qualified annuity under a charitable trust may be "for a term of years (not in excess of 20 years) or for the life or lives of such individual or individuals.") According to the Cooks, the spousal interests they have created should be measured against two lives, rather than one. However, Congress did not include the term "lives" when it drafted the language of section 2702.