T.C. Memo. 2014-149

UNITED STATES TAX COURT

AMAZON.COM, INC. & SUBSIDIARES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 31197-12.          Filed July 28, 2014.

<u>John B. Magee</u>, <u>Bryon A. Christensen</u>, <u>Tracey X. Zheng</u>, <u>Andrew Weinstein</u>, <u>Sanford W. Stark</u>, <u>Hartman E. Blanchard, Jr.</u>, <u>Robert S. Kirschenbaum</u>, <u>Beth Lee Urich Williams</u>, <u>John G. Ryan</u>, <u>Saul Mezei</u>, <u>Julia Mara Kazaks</u>, <u>Michael D. Kummer</u>, <u>Christopher P. Murphy</u>, <u>Royce L. Tidwell</u>, <u>Rajiv Madan</u>, and <u>John A. Polito</u>, for petitioner.

<u>Jill A. Frisch</u>, <u>Melissa D. Lang</u>, <u>Lloyd T. Silberzweig</u>, <u>Anne O'Brien Hintermeister</u>, and <u>Mary E. Wynne</u>, for respondent.

**[\*2]**                    MEMORANDUM OPINION

LAUBER, Judge:  This case is calendared for trial in Seattle, Washington, in November 2014.  Respondent determined under section 482 substantial deficiencies in petitioner's income tax for 2005 and 2006.[1]  Many of these adjustments arise in connection with a cost sharing arrangement executed by petitioner and certain affiliates pursuant to section 1.482-7, Income Tax Regs.[2]

Currently before the Court is petitioner's motion for partial summary judgment filed under Rule 121.  Petitioner contends that it is entitled to judgment as a matter of law on two related questions:  (1) whether respondent abused his discretion by allocating 100% of the costs in certain cost centers to intangible development costs (IDCs) under section 1.482-7(d)(1), Income Tax Regs.; and (2) whether petitioner is entitled as a matter of law to apply an allocation method to determine IDCs under the governing regulations.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the tax years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Section 1.482-7, Income Tax Regs., was redesignated section 1.482-7A, Income Tax Regs., with the promulgation of new regulations effective January 5, 2009.  See T.D. 9441, 2009-7 I.R.B. 460.

**[\*3]**  On the first question, we find that there are genuine disputes of material fact that preclude partial summary judgment.  On the second question, we conclude that petitioner must show that the cost centers in question constitute "mixed costs"--that is, costs benefiting other business activities as well as intangible development activities--before it can justifiably employ an allocation method to determine IDCs under section 1.482-7(d)(1), Income Tax Regs.  Because there is a genuine dispute of material fact as to whether, and the extent to which, the cost centers at issue constitute "mixed costs," we will deny petitioner's motion for partial summary judgment on both questions.

Background

We assume the following facts based on the pleadings, petitioner's motion for partial summary judgment, and the attached exhibits.  They are stated solely for the purpose of deciding this motion for partial summary judgment and not as findings of fact in this case.  See Fed. R. Civ. P. 52(a); Rule 1(b); Cook v. Commissioner, 115 T.C. 15, 16 (2000), aff'd, 269 F.3d 854 (7th Cir. 2001). Petitioner's principal place of business was in Seattle, Washington, when it filed its petition.

Petitioner and its U.S. affiliates executed with Amazon Europe Holdings Technologies SCS, a Luxembourg affiliate, a cost sharing arrangement (CSA) that

**[*4]** was intended to comply with section 1.482-7(b), Income Tax Regs. In entering into the CSA, the parties agreed to share IDCs. The regulations define IDCs and provide that costs which contribute both to intangible development activity and to other business activities must be allocated "on a reasonable basis." See sec. 1.482-7(d)(1), Income Tax Regs.

Petitioner's cost accounting system during 2005-06 did not specifically segregate IDCs from other operating costs. Petitioner therefore developed a formula and applied it to allocate to IDCs a portion of the costs accumulated in various "cost centers" under its method of accounting. "Cost centers" are accounting classifications that enable petitioner to manage and measure operating expenses.

Petitioner tracked expenses in six broad categories: (1) Cost of Sales, (2) Fulfillment, (3) Marketing, (4) Technology and Content (T&C), (5) General and Administrative (G&A), and (6) Other. According to petitioner's 2005 SEC Form 10-K, Annual Report Pursuant to Section 13 or 15(d) of the Securities and Exchange Act of 1934, the T&C category expenses "consist principally of payroll and related expenses for employees involved in research and development, including application development, editorial content, merchandising selection, systems and telecommunications support, and costs associated with the systems and telecommunications infrastructure."

**[\*5]**  Each of the six broad expense categories, including the T&C category, is a "rollup" of numerous individual cost centers.  For some calendar quarters, more than 200 individual cost centers, each recording a specific type of expense, "rolled up" into intermediate cost centers and ultimately into the T&C category.  For example, cost center 7710, "Systems and Network Engineering," rolls up into C210 ("Product Development") and C250 ("Technology/External").  All costs accumulated in "Product Development" and "Technology/External" roll up into the Technology & Content category.

Petitioner took the position that none of the costs accumulated in Cost of Sales and Other are allocable to IDCs, and respondent accepts that position.  With few exceptions, petitioner's operating costs roll up into the Fulfillment, Market-ing, T&C, and G&A categories.  Petitioner treated portions of the costs accumu-lated in the first three just-mentioned categories as IDCs, using an allocation for-mula it developed.  Petitioner treated a portion of the costs accumulated in the G&A category as IDCs, on the basis of the IDC outcomes for the other categories.

Respondent has not challenged petitioner's use of its allocation method, or the amounts of IDCs that it determined, for the Fulfillment and Marketing cate-gories.  Respondent does, however, dispute petitioner's allocation to IDCs of costs accumulated in the T&C category.  In the notice of deficiency respondent

**[\*6]** determined that 100% of T&C category costs constitute IDCs. As a corollary of that determination, respondent adjusted the percentage of G&A costs that petitioner had allocated to IDCs.

On June 13, 2014, respondent filed a motion to compel production of documents relating to petitioner's cost allocations under section 1.482-7(d)(1), Income Tax Regs. Petitioner objected to this request as unduly burdensome and, on July 2, 2014, we denied respondent's motion in its then-current form. Our order stated, however, that "respondent is entitled to discovery as to the facts underlying petitioner's cost allocations, as to whether costs within the T&C category are 'mixed' as petitioner contends, and as to the appropriateness of the formula petitioner has used to allocate T&C category costs to IDC."

## Discussion

### I. Summary Judgment Standard

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). Either party may move for summary judgment upon all or any part of the legal issues in controversy. Rule 121(a). A motion for summary judgment or partial summary judgment will be granted only if it is shown that there is no genuine dispute as to any material fact and that a decision may be rendered as a

[*7] matter of law. See Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002).

II.    Analysis

A CSA is an agreement whereby the parties "agree to share the costs of development of one or more intangibles in proportion to their shares of reasonably anticipated benefits from their individual exploitation of the interests in the intangibles assigned to them under the arrangement." Sec. 1.482-7(a)(1), Income Tax Regs. A participant must calculate its share of IDCs on the basis of factors that can reasonably be expected to reflect that participant's share of anticipated benefits. Sec. 1.482-7(b)(2), (f)(1), Income Tax Regs. A participant's "costs of developing intangibles * * * mean all of the costs incurred * * * related to the intangible development area." Sec. 1.482-7(d)(1), Income Tax Regs. "If a particular cost contributes to the intangible development area and other areas or other business activities, the cost must be allocated between the intangible development area and the other areas or business activities on a reasonable basis." Ibid.

Petitioner contends that respondent's determination to allocate to IDCs 100% of the costs in the T&C cost centers is inconsistent with these regulations. According to petitioner, the regulations require that the Commissioner "specifically identify costs 'related to the intangible development area'" or "reasonably allo-

[*8] cat[e] mixed costs." By "simply taking all of the T&C cost centers and including 100 percent of those costs," respondent has allegedly violated the regulatory command that "[c]osts that do not contribute to the intangible development area are not taken into account." See sec. 1.482-7(d)(1), Income Tax Regs. Respondent replies that petitioner "has not provided sufficient information to substantiate" that the costs in question are mixed, i.e., that any of the T&C category costs contribute to business activities or areas other than the intangible development area. That being so, respondent contends, petitioner has not laid the necessary predicate for application of an allocation formula.

We agree with respondent. Petitioner has yet to demonstrate that the T&C category contains nontrivial costs that are properly characterized as something other than IDCs. Respondent has sought discovery on this issue and was seeking additional discovery at the time this motion was filed. At the moment, therefore, it is a disputed question of material fact whether the T&C category contains "mixed" costs. Until petitioner establishes that the T&C category contains a nontrivial amount of "mixed" costs, we cannot rule as to whether respondent abused his discretion in determining that 100% of T&C category costs constitute IDCs.

Petitioner contends that it is not required by the regulations to show that its T&C costs are "mixed" before applying an allocation formula. In petitioner's

**[*9]** view, it need only prove that the allocation formula it developed and applied is "reasonable." If that formula is "reasonable," petitioner contends, the formula necessarily allocates costs correctly as between the intangible development activity and other business activities.

Petitioner's argument puts the cart before the horse. The regulations permit costs to be allocated only "[i]f a particular cost contributes to the intangible development area and other areas or other business activities." Sec. 1.482-7(d)(1), Income Tax Regs. The status of costs as "mixed," in other words, is a precondition to the application of an allocation formula. Petitioner must show that this condition has been satisfied before it can proceed to the next step, which is to show that its allocation formula reasonably allocates mixed costs. At this stage of the litigation, we cannot rule as to whether respondent abused his discretion in declining to permit the use of an allocation formula with respect to T&C category costs.

Petitioner evidently sought partial summary judgment on this issue in part because it believes that establishing the "mixed" nature of T&C category costs could be tedious and time-consuming. We do not see why this should be so. It is not necessary that the parties painstakingly examine each cost in the 200-plus baseline cost centers in order to determine whether a nontrivial portion of T&C category costs are "mixed." Sampling techniques or a review of critical cost

**[*10]** centers may help answer this question. The facts established by this exercise, moreover, may shed light on the reasonableness of petitioner's allocation formula as applied to T&C category costs. One way or another, petitioner must establish that it has T&C category costs requiring allocation before the Court will permit petitioner to allocate such costs.

For these reasons, we will deny petitioner's motion for partial summary judgment.

<u>An appropriate order will be issued</u>.